UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:04CV-8-R

LARRY LASTER                          PLAINTIFF

v.

TURNER HOLDINGS, LLC
d/b/a TURNER DAIRY                  DEFENDANT

## MEMORANDUM OPINION

Defendant Turner Holdings, LLC ("Turner"), has moved for summary judgment (Dkt. # 12). Plaintiff Larry Laster ("Laster") responded (Dkt. # 17), Turner replied (Dkt. # 18), and this matter is now ripe for decision. For the reasons given below, Turner's motion for summary judgment is **GRANTED**.

## BACKGROUND

The Plaintiff, Mr. Laster, was employed by Turner at Turner Dairy in Fulton, Kentucky in various positions over his nineteen-year career there. Most recently, he was employed as a "break relief operator" in its plant. This position involved relieving the regular operators of the various machines in the plant (machines that packaged and labeled the dairy products) during their breaks (10- to 15-minute breaks as well as 30-minute dinner breaks). Operating the various machines required putting empty jugs on a track to run them through a filler; putting caps in the machines so the filled jugs could be capped; and putting rolls of labels in the machines for the various companies to whom the dairy provided milk. Accomplishing these tasks required lifting boxes of jugs weighing up to 60 pounds and rolls of labels weighing up to ten pounds, as well as climbing ladders and moving around the machines to access the various parts of each machine.

In May 2001, while operating one of these machines, Laster climbed an eight-foot ladder to refill the machine's supply of caps. His foot slipped, and he fell off the ladder, where his fall was broken by another employee who happened to be standing nearby. He called his supervisor, John Duff, who took him to the Parkway Hospital emergency room in Fulton, Kentucky because he believed he had injured his back. Laster was examined at the emergency room, and afterwards he received treatment from Dr. Cox at the Hillview Clinic in Fulton. Laster returned to work approximately a week after the accident, but Dr. Cox had put some restrictions on his duties, including a weight restriction on the amount he could lift. He continued to work off and on until January of 2002, when he had surgery on his back. After recovering from his surgery, he returned to work at the plant, in the capacity of relief operator, in May of 2002. Laster was still restricted in his duties by his surgeon; his restrictions included some lifting, stooping, bending and climbing. Although he could not do all the things he had previously been able to do in his capacity of relief operator, he continued to work in that position until August, 2003, when Turner terminated him.

After his termination, Laster filed a grievance with his union, the Teamsters Local 236 ("Union"). The Union negotiated on behalf of Laster and another employee, Delbert Eaves, who had a similar back problem, and agreed with Turner to resolve the grievance by offering them jobs as "Load Checkers," which would accommodate their medical restrictions. These jobs were "trial positions" that involved supervising the loading of products onto delivery trucks and did not involve work inside the plant itself. Turner retained the right to eliminate the positions at any time and to lay off the employees. Laster refused to accept the position, and filed suit in this court seeking injunctive relief and monetary damages based upon (1) Turner's alleged termination of his employment in retaliation for his filing a worker's compensation claim; (2)

Turner's alleged violation of its collective bargaining agreement with its employees; (3) Turner's alleged violation of an implied covenant of good faith and fair dealing; (4) Turner's alleged violation of an oral agreement of continued employment; (5) Turner's alleged violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-1 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§1212 *et seq.*, KRS §344.010 *et seq.* and the Kentucky Equal Opportunity Act, KRS §207.150 *et seq.*; and (6) Turner's alleged violation of the federal Family and Medical Leave Act.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

In its Motion for Summary Judgment, Turner argues essentially that Laster's claims are pre-empted by the Labor Management Relations Act of 1947, 29 U.S.C. §185, because Laster used the grievance process available to him under the collective bargaining agreement ("CBA") between Turner and the Teamsters Union. The Sixth Circuit has held that "an agreement settling an employee grievance prevents the employee from seeking relief on a non-labor law cause of action." *Bakers Union Factory No. 326 v. ITT Continental Baking Co., Inc.*, 749 F.2d 350, 355 (6th Cir. 1984) (citing *Griess v. Climax Molybdenum Co.*, 488 F.Supp. 484, 487 (D. Colo. 1980) and *Suissa v. American Export Lines, Inc.*, 507 F.2d 1343, 1347 (2d Cir. 1974)). The *Bakers* court noted that "[t]he rule in favor of the finality of settlement agreements promotes the union's interests in affording quick and inexpensive protection to those it represents ... and protects employers, who otherwise would have little reason to rely upon terms of a settlement proposed by the Union if the finality of any arrangement were subject only to the whims of affected employees." *Id.* at 356 (internal citations and quotation marks omitted).

The Sixth Circuit has also held that the LMRA's pre-emption "extends to state law claims that are substantially dependent on analysis of a collective bargaining agreement, but it

does not reach claims that only tangentially involve CBA provisions." *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004) (citing *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir. 1990), *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994), and *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)) (internal quotation marks omitted). As the *DeCoe* court noted, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for §301 pre-emption purposes." *DeCoe* at 216, citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

      The *DeCoe* court further held that the Sixth Circuit applies a two-step test to make the determination of whether a claim is "independent" of the collective bargaining agreement for §301 pre-emption purposes. The first step requires the court to determine whether "proof of the state law claim requires interpretation of collective bargaining agreement terms." *Id.* (citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990)). The second step requires that we "ascertain whether the right claimed by the plaintiff is created by ... state law." *Id.* If a claim satisfies both criteria (it is created by state law and does not require interpretation of the CBA), it is not pre-empted by §301; if it fails either or both, it is pre-empted. *Id.* In examining the claim to determine whether it requires interpretation of the CBA terms, "the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (citing *Terwilliger*, 882 F.2d at 1037). "If the plaintiff can prove all of the elements of

his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* (citing *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir. 1989). The *DeCoe* court also noted that "...neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.* (citing *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800).

This court, then, will analyze Laster's state-law claims for §301 pre-emption under the two-part test set forth in *DeCoe*. As to each claim that is not pre-empted, the court will also analyze whether Laster has presented evidence sufficient to defeat the summary judgment motion on that claim.

**Retaliation in violation of KRS § 342.197**

Laster's complaint alleges that "after Plaintiff initiated his workers [sic] compensation proceeding, and upon information and belief, in direct retaliation therefor and/or his disability, Defendant engaged in conduct to selectively discriminate against Plaintiff and violated its own policies and employment customs with regard to Plaintiff's employment in violation of KRS 342.197." (Complaint, Attachment #1 to Dkt. # 2, p. 2.) KRS 342.197 provides in relevant part that: "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under [Chapter 342]." A *prima facie* case under the statute requires a plaintiff to demonstrate that he "(1) engaged in statutorily-protected activity, (2) was discharged, and (3) there was a connection between the activity and the discharge." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (citing *Willoughby v. GenCorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1990)) (internal quotation marks omitted). The "connection" portion of the test "requires a showing that the claim was a substantial and

motivating factor but for which the employee would not have been discharged." *Id.* (citing *First Property Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185 (Ky. 1993)) (internal quotation marks omitted).

In September of 2002, approximately nine months after his surgery and four months after he returned to work, Laster filed a workers' compensation claim, which he settled for a lump-sum payment. He continued to work at Turner until his termination in August, 2003. At the time of his termination, Laster was told that he was being terminated because of the restrictions on his ability to perform the lifting and climbing sometimes required in his position as relief operator. (Laster deposition, Dkt. # 13, at 40.) Laster indicated that he had filed several workers' compensation claims for past minor injuries sustained while working at Turner and, to the best of his recollection, they had been paid to his satisfaction without incident. (*Id.*, 46-50). Also, Laster indicated in his deposition that he had not been told that he was terminated because he filed a workers' compensation claim and that he based his claim of retaliation on his general treatment by Turner in its decision to terminate him, not any specific comments about his workers' compensation claim.

Laster's retaliation claim appears to meet both of the criteria for avoiding §301 pre-emption: analysis of the claim would not require interpretation of the CBA and the right Laster is seeking to vindicate was created by the Kentucky workers' compensation law. However, Laster has not raised a jury issue as to the claim itself because, although the claim passes the first and second prongs of the test (Laster sought and received workers' compensation and was terminated) there is not sufficient evidence to indicate that his workers' compensation claim was a "substantial and motivating factor" as required by *Zarebidaki*. The only evidence supporting a causal link between the workers' compensation claim and Laster's termination is Laster's

assertion that Turner "was going to have to terminate [him] because of their insurance." (Laster deposition, Dkt. # 13, at 40.) He also said, however, that the termination "was because of the permanent restrictions" imposed by his treating physician on his ability to do certain physical activities. (*Id.*) This, combined with his earlier successful filing of several workers' compensation claims, the significant lapse of time between the settlement of his workers' compensation claim and his termination, and Turner's efforts to find a way to continue employing him in spite of his limitations, indicate that Laster has not presented evidence sufficient to withstand the summary judgment motion.

**Violation of KRS §§ 344.010** *et seq.* **(Kentucky Civil Rights Act)**

The Kentucky Civil Rights Act provides, in relevant part, that "[i]t is an unlawful practice for an employer: (1) ...to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment ... because the person is a qualified individual with a disability." KRS § 344.040. The statute defines "disability" as: "(a) [a] physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) [a] record of such an impairment; or (c) [b]eing regarded as having such an impairment." KRS § 344.010(4). The statute also provides that: "[i]n effectuating the purposes of this chapter no employer ... shall establish any employment practices affecting the terms, conditions and privileges of employment in derogation of an established seniority system or which contravenes an existing collective bargaining agreement." KRS §344.045. Any claim for a violation of the Kentucky Civil Rights Act would therefore require the court to interpret the CBA. Therefore, such a claim is pre-empted by §301 under the *DeCoe* test.

**Violation of the CBA**

Laster also claims that Turner violated the CBA; specifically, Section 19 (in which Turner agreed "not to enter any agreement as a means of avoiding its obligations under the terms and provisions of [the CBA]") and Section 21B (in which Turner agreed not to "arbitrarily" discharge employees).  By its very terms, this claim would require the court to interpret the CBA.  Therefore, it fails the first step of the test set forth in *DeCoe* and is pre-empted by §301.

**Implied Covenant of Good Faith and Fair Dealing**

Laster claims that Turner violated a covenant of good faith and fair dealing implied in its employment agreement with him. Under Kentucky law, however, it is clear that no such cause of action is cognizable.  The wrongful discharge exception to the "terminable-at-will" doctrine has been narrowly defined by the Kentucky Supreme Court.  The requirements for such a claim are: "1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.  2) That policy must be evidenced by a constitutional or statutory provision. 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  In *Firestone Textile Co. Div. v. Meadows*, the Kentucky Supreme Court applied this exception to a case in which "the discharge [was] motivated by the desire to punish the employee for seeking [workers' compensation] benefits to which he is entitled by law."  666 S.W.2d 730, 734 (Ky. 1984).  Similarly, the Kentucky Supreme Court recognized a cause of action for wrongful discharge where the worker was allegedly discharged in retaliation for authorizing a labor union to represent him in collective bargaining with his employer.  *Pari-Mutuel Clerks' Union v. Ky. Jockey Club*, 551 S.W.2d 801 (Ky. 1977).

In *Grzyb*, the Kentucky Supreme Court clarified its position on the types of public policy which qualify for the wrongful discharge exception by explicitly adopting the test set forth by

the Michigan Supreme Court in *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 316 N.W.2d 710 (1982). 700 S.W.2d 402. That test requires a plaintiff to show either that "the alleged reason for the discharge of the employee was the failure or refusal [by the employee] to violate a law in the course of employment" or that "the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* (Internal citations and quotation marks omitted.) Such a claim would be created by state law and would not require interpretation of the CBA, so it would not be pre-empted by §301.

Mr. Laster has not expressly indicated which, if any, such statute he believes gives him a cause of action for wrongful discharge. However, as discussed above, he has brought separate claims in this case under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-1 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§1212 *et seq.*, KRS §344.010 *et seq.*, the Kentucky Equal Opportunity Act, KRS §207.150 *et seq.*, and the federal Family and Medical Leave Act. Under *Grzyb*, however, these statutes cannot support a wrongful discharge claim because each statute has its own enforcement provisions; as the *Grzyb* court said about the Kentucky Civil Rights Act, "[t]he statute not only creates the public policy but preempts the field of its application." *Id.* at 401. For these reasons, Mr. Laster cannot sustain a claim for wrongful discharge in violation of an implied covenant of good faith and fair dealing under Kentucky law.

**Violation of an Oral Agreement of Continued Employment**

Mr. Laster also complains that Turner violated an oral agreement of continued employment. (Complaint, Attachment # 1 to Dkt. # 2, p. 2.) Mr. Laster has not specified who at Turner allegedly made such an agreement with him. In his deposition, however, he alleged that during the course of his union grievance Mr. Atchley told him essentially that if he got his medical restrictions lifted he could have his job back. Mr. Laster cites a Court of Appeals of

Kentucky decision for the proposition that "representations of a member of management create a jury issue regarding the existence of an implied contract of employment altering employment at-will, so as to make summary judgment reversible error." (Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. # 17, at 6.)  *Hammond v. Heritage Communications, Inc.*, 756 S.W.2d 152 (Ky. App. 1988).  Such a claim would not be pre-empted by §301 because it arises from state law and would not require interpretation of the CBA itself.  Even assuming, however, that Mr. Atchley did make such a statement, Mr. Laster's written acknowledgment of his receipt of the Turner Employee Handbook (Attachment #1 to Dkt. # 19) contains the following provision: "[w]ritten or oral statements made to the Associate are not to be interpreted in any way that alters the 'at-will' relationship."  Based upon this provision, Mr. Laster could not maintain a breach of contract claim.

**Violation of the Civil Rights Act of 1964, the ADA, and the FMLA**

Mr. Laster's claims of violations of these federal statutes are not susceptible to the *DeCoe* analysis because they are not rights created by state law.  Therefore, the court will analyze these claims to determine whether or not they survive the summary judgment motion.

*Civil Rights Act of 1964*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating in the workplace on the basis of religion, race, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Mr. Laster has not alleged discrimination on any of these bases; therefore, summary judgment is appropriate on this claim.

*Americans with Disabilities Act*

The Americans with Disabilities Act (ADA) provides, in relevant part, that "[n]o [employer] shall discriminate against a qualified individual with a disability because of the

disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).  Under the statute, "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." §12102(2)(a).  The United States Supreme Court has held that the term "major life activities" "refers to those activities that are of central importance to daily life." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 691 (2002).  Further, the court said, such "terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id*.  Therefore, the Court said, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. The Court in that case cited as examples of such activities "household chores, bathing, and brushing one's teeth" because they fell into the category of "manual tasks of central importance to people's daily lives." *Id*. at 693.

Mr. Laster's deposition testimony indicates that he is not able to mow his lawn, ride a horse or perform electrical work, all of which he was able to do before his injury.  However, he also indicated that he is still able to feed himself, shower, and drive a vehicle.  The evidence, then, indicates that Mr. Laster is not disabled within the meaning of the ADA; therefore, summary judgment on his claim for a violation of 42 U.S.C. §12112(a) is appropriate.

*Family and Medical Leave Act*

Mr. Laster fails to specify, either in his complaint or in his response to the motion for summary judgment, which part of the Family and Medical Leave Act (FMLA) he believes Turner violated.  He has not alleged that he was denied leave that Turner was required to provide

under the FMLA, or that his termination was in retaliation for leave taken pursuant to the requirements of the FMLA. Therefore, Mr. Laster has not alleged facts sufficient to withstand the motion for summary judgment on his FMLA claim.

**Kentucky Equal Opportunity Act**

In order to maintain a claim under the Kentucky Equal Opportunity Act, KRS §§ 207.130 *et seq.*, Mr. Laster is required by that statute to provide notice of a violation of the EOA to the Commissioner of Workplace Standards. KRS § 207.230(2). The record does not reflect that Mr. Laster provided such notice; therefore, the court will not reach the issue of whether Mr. Laster has alleged facts sufficient to defeat the motion for summary judgment on any such claim.

**Intentional or Negligent Infliction of Emotional Distress**

Mr. Laster alleges in his complaint that Turner's conduct constituted intentional and/or negligent infliction of emotional distress. In Kentucky, the elements of either a negligent or intentional emotional distress claim include "emotional distress" or "mental distress." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990); *Deutsch v. Schein*, 597 S.W.2d 141, 146 (Ky. 1980). Mr. Laster has alleged neither. Therefore, summary judgment on those claims is appropriate.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order shall issue.